Good afternoon. May it please the Court, my name is Jeffrey Rowe and I'm appearing for the Petitioner of the Estate of Thomas F. White in this manner. And thank you all for your patience. It's always tough to be the last case on a launch panel. It is. Last, but hopefully not least. Now you're all qualified to do Indian cases, too. Very interesting. What I'd like to do, Your Honors, is start out by emphasizing the amount of fraud that has been developed over the many years and, admittedly, the many motions that I'm able to get. My understanding is that the case, the current situation, which is a mandamus, and depends on clear error of law, or clear error anyway, really turns on a legal question, which is, is any of that fraud relevant because there was a settlement in which the district court adjudicated nothing? Is that — I mean, isn't that the crux of why there's claims to — it's not that anybody's decided there wasn't fraud. The question was, was it fraud on the court in the situation in which there was a settlement? Right. I think that's correct, Your Honor. The — it's not fraud on Thomas White. There's a separate ground, which is fraud on the court. And for those — there are several cases, actually, that are cited in the reply brief that I've submitted to the court that talks about the focus on whether or not the court has been defrauded, not whether or not the particular party has been defrauded. And courts have found in a number of situations where there has been a settlement that if there is fraud on the court, which focuses on fraud on the judiciary, it's a separate question as to whether or not the parties have been defrauded that may impact or impair their ability to litigate the case. Right. But the question is, how can a court be defrauded with regard to the merits of a case that was never litigated before? You mean in this case? Yes, or in general. Well, in this case, there were numerous decisions that were made by not only Judge Breyer, but by Judge Spiro, Magistrate Judge Spiro, that relied on the — So it would be most helpful to me if you would focus really directly on that, on those. You mean on the fraud with respect to the settlement? Yes. Specifically, what was it that was fraud on the court with, I guess, before the settlement was reached? Okay. The court was initially defrauded when there was an application, Your Honor, for the appointment of a guardian litem, Mauricio Borrego. Mr. Replogo represented the plaintiffs, and he defrauded the court when making that application. Basically presenting to the court that these are legitimate claims against Thomas White on behalf of 22 plaintiffs. That was the initial fraudulent representation to the court. Then there were a series of motions, Your Honor, that were made to Judge Breyer as the case progressed into the litigation, whether or not the case should be dismissed, reformed on convenience, setting of the trial date. Then the case proceeded into the settlement conference on June — actually, there were two settlement conferences before Judge Spiro in June of 2005, where Judge Spiro talked to the parties, talked to the attorneys, and represented to him that this was a legitimate case. And so the magistrate was defrauded by the scheme to present a legitimate case when it wasn't, and it was knowingly not, a legitimate case from day one. Then the case was settled by virtue of a settlement agreement, a signed settlement agreement. Then Mr. Replogo filed a motion with the court to have that settlement agreement approved and have the minors' compromises approved as well. We came to court on August 29th of 2005. I then became the attorney of record. And there was fraud there. Judge Breyer indicated he was going to approve the settlement, and he was going to approve the minors' compromises. Mr. Replogo represented him to the court that it was a legitimate case, that the plaintiffs had been harmed. And then we went into a series of motions with respect to approving the judgment on the settlement agreement. There was a motion for summary judgment. It was filed. That was heard, I think, on December 5th of 2005. And, again, a fraud on the court. So a number of decisions that were made by the court from the very outset, when the case was filed and a guardian ad litem was appointed, all the way through the litigation into the settlement conference process, the signing of the settlement agreement, then the application to Judge Breyer to approve that settlement agreement, and then ultimately enter a judgment on his summary judgment. Now, between December 5th, which is when the judgment was entered, and previously when I became attorney of record in the case, August 29th, this is, again, 2005, I filed a series of motions to vacate the settlement, to set it aside, because there were a series of issues and questions that had arisen, Mr. Barrego's authority, whether or not the settlement agreement was properly signed, and so on. A number of motions to vacate the settlement agreement. Mr. Replogo filed opposition and said to the court there was no fraud on the court. Mr. Barrego is justified in handling the case. The settlement agreement, in fact, was properly notarized in Mexico. So there are a series of decisions. And they're not in the briefing here, because that's not an issue that was raised actually by the real parties. Actually, only four of the real parties have responded. The other 18 didn't file an answer, which is strange. But the real parties that did respond said this is a settlement. But they didn't argue that it didn't impact the court. I mean, I can give to the court a list of all the decisions that were made by the court, and actually it's in the motions that were filed with respect to the request to conduct additional post-judgment discovery. So there is a settlement. Judge Breyer, in fact, found in November of 2011 that the petitioner had made a prima facie showing of fraud to justify post-judgment discovery. And that's the process that we're now engaged in. So the request here is to stop the money from flowing while the ongoing discovery is proceeding. There's a decision that was recently made about a week and a half ago by Judge Cousins indicating that he would hold in-camera hearings with respect to some of the communications. That process is proceeding. And so the question of whether or not there's fraud on the court, you know, depends on whether or not the court, in fact, was defrauded in any of its decisions and, of course, whether or not the fraud itself is substantial enough. The discovery now has only to do, or does it have only to do, with the allegations of essentially hacking the plaintiff's computers? The discovery that's now proceeding that was ordered by Judge Breyer back in 2011, November 2011, deals with the hacking of Mr. Weiss's attorneys' and investigators' computers. That's correct. I do – I did file a motion last week to expand the scope of Judge Cousins' review to include any evidence of fraud, given the amount of new additional information of fraud that was presented on August 2nd of last year. So, yes, right now the only post-judgment discovery that was ordered – that has been ordered – deals with evidence of hacking. But, again, I'm asking that it be expanded to include anything relating to fraud. So... So you're here on mandamus, which is a tough standard. What's the clear error? Well... The clear error of law. The clear error, Your Honor, is that Judge Breyer did not – he did exercise discretion, but he did it in a way that was not justified by the evidence. The evidence that was presented to him of fraud on August 2nd of last year was really overwhelming. Declarations, admissions by Borrego, the guardian ad litem, the findings by the Mexican court based on the report by the Mexican prosecutor, statements by three of the four plaintiffs that it was a fraud, corroborating evidence by other witnesses, and coupled with that, no opposition, no declarations countering any of those declarations, any of that evidence. Not one declaration from any of the 22 plaintiffs, White molested me. It was not a fraud, the case. It was a legitimate case from the get-go. There was no fraud. I was molested. I was harmed. Nothing. Not to date. Not even before this Court has there been a declaration or any evidence countering any of the declarations that have been filed, evidence that has been filed, or impeaching any of the evidence that has been presented. Mauricio Borrego is in jail down in Mexico for doing just this, for defrauding the Court, for committing an extortion on Thomas White. The real parties, you would think, would maybe get a declaration from Mr. Borrego contesting what is alleged that he said to Mr. Haverlech, but nothing has come from them. So Judge Breyer, I would submit, rendered a decision very quickly at the very end of the hearing on August 2nd, said, I'm not going to issue a stay until you do your Rule 60 motion to vacate. That was counter to the evidence that had been presented to him. And his decision to deny a stay, mind you, without a written opposition from the plaintiffs, there was no opposition. It was filed by the plaintiffs to the motion to stay. Nor did Mr. Wagstaff say anything at the hearing. He declined to say anything at the hearing. So it was Judge Breyer essentially dismissing my argument for a stay, which I would submit is completely counter to the evidence that was submitted to him of an overwhelming massive amount of fraud on the Court by everyone. Replogle, Borrego, the plaintiffs, everybody was involved before the case was filed. And they succeeded in getting a settlement. They cornered White. He was in jail for crimes in Mexico. He was in jail for crimes in this district, the Northern District crimes. Borrego and Replogle knew that he couldn't testify. A trial was set in October of 2005. White wouldn't have been able to appear. So he was cornered. They succeeded in their fraudulent scheme. They accomplished it. It was fraud on the Court by impacting every one of the decisions in the case, starting from day one and going all the way through to the decision, the entry of the judgment. Judge Breyer also abused his discretion by issuing a denial of a stay that is really against logic, having the effect of the facts as he found them. Actually, he didn't find any facts. But curiously, he did find that there was prima facie evidence of fraud to justify post-judgment discovery. Now, the harm to the estate of Thomas White, which really essentially are the heirs of the estate, are the loss of money. Every month, $16,000 is being paid out to what are characterized as undereducated, underprivileged men, young men. I don't know if they're boys, men now in Mexico who have no other means of support. That money's gone. If White prevails, if the estate of Thomas White prevails on the Rule 60 motion, he'll never be able to recover that money from those individuals in Mexico. How much per month did you say? How much right now? Yeah. Has been paid out? No, no. How much you said per month is going out? $16,000. $16,000? $16,000 a month. $800 per month per plaintiff. When do you think the Rule 60 motion will be ruled on and decided? Well, we're in the process of completing the post-judgment discovery. It's taking time. Judge Cousins has been very diligent about reviewing the materials. He's now in the process. He overruled the... You're telling me... When the Rule 60 motion will be? Yeah. Probably not until the end of... Well, probably not until the fall of this year, I would guess. I mean, we need to finish the post-judgment discovery. I do have a follow-up motion to take the depositions of the plaintiffs. Let's go down. We want to go down to Mexico and depose all of them. You know, why they haven't submitted a declaration is they don't want to commit perjury, and they don't want to subject themselves to the criminal charges in Mexico. I mean, there are no declarations... I'm repeating myself. I understand. No declarations even to this court by any plaintiff. White molested me. It was a legitimate case. It's not a fraud on the court. The overwhelming evidence is that it was a fraud on the court. Now, what's the harm to the plaintiffs by stopping the money? They've gotten millions of dollars so far. I can't find out how much is left. I tried. I filed a motion with Judge Breyer because the trustee was giving me information, and then all of a sudden he decided that he would not give me any information on the amount of money, and I made a motion, and it was denied. So I don't know. I would guess a couple million is left, but I think that means millions have been paid out to 22 of these individuals, 22 plaintiffs in Mexico. What's the harm to them? There's no evidence presented to Judge Breyer that any of the plaintiffs would be harmed by not continuing to get $800 per plaintiff per month. Nothing presented to them. Nothing presented to this court. If you issue this day, we're going to be harmed because we have no other means of support. We need medical. We need food. Whatever. Whatever it is. Are they secure, the plaintiffs? Sure, they're secure. The money is sitting in a trust. They've already gotten millions of plaintiffs. Why they need more has not been presented to you, and the remainder of the money is secure. It's sitting. It's presumably earning interest. So, you know, given the overwhelming evidence, given that Judge Breyer has found prima facie showing of fraud that justified post-judgment discovery, is proceeding, you know, along. We're doing it, attempting to do it as diligently as possible. Judge Cousins is overruling objections and so on. So I think I would urge the Court to issue a writ. Thank you, counsel. And actually to issue a temporary stay immediately until the Court issues its final decision in the case. Thank you. Do I have time to reserve anything? We'll give you a couple minutes, but you're over time. Okay. Thanks very much. Thank you. May it please the Court, I'm James Wagstaff. I'm the Court opponent guardian, and I'm acting as the legal guardian. Your Honor, you framed it perfectly. This is a writ of mandate. It is extraordinary remedy seeking to review a discretionary decision of a trial court who has been laboring over this case now for almost a decade. Your Honor, the prism through which we analyze this, as Your Honor said in an earlier argument, the controlling standard cannot be ignored. It requires that there be clear and undisputable evidence, not about the fraud. It's about whether the Court made an error in not stopping the payments. It's very important. This is we're not here before you solely on the motion to vacate. We're here only on the discretionary decision not to stay. And it has to be clearly erroneous. As Your Honors know, essentially never on a discretionary decision. Your Honor, let me start with this. We're not here for the first time. The number of seats before you are the number of motions to vacate that have been filed in this case. A motion to stay has been filed five times. This Court has affirmed on mandamus the denial of that motion to stay three times. Each of those times was when they were making allegations that there was some sort of recantation and falsity. The suggestion, Your Honor, that in this situation is proper. So first we have to tell whether it's clearly erroneous. Your Honor, they had presented to you a new case citing Rule 62B, which is pretty good, teaching civil procedure. That's the only reason they sought a stay, 62B. 62B, by its own language, only affects a stay pending appeal, as Your Honors know, if it's about an execution of a judgment or an enforcement of a judgment. That's not this case. We have a settlement in which the money is already into an account. That's not a judgment. So Rule 62B does not apply by its own terms. This is not, you know, what it normally applies. You've got a judgment pending appeal. They don't want to get the assets of the defendant. It is designed to protect the status quo. The status quo here, of course, is the money has already been paid into a settlement fund. This is not Mr. White's money. Your Honor, that brings us then to the elements if it were a 62B motion. There has to be – let's start with the easy one. There's dispositive. There must be irreparable injury. It's a requirement for a stay pending appeal, as his own case tells us. The case law is very clear that you do not have irreparable injury unless if it's involving money, period. Read paragraph 23 on page 18 of this petition in this court. The only irreparable injury he describes is the loss of money. This circuit has been overwhelmingly consistent that the loss of money is not irreparable injury. That's just the law. But there is more, Your Honor. Your Honor knows there has to be a balancing of equities. The suggestion, Your Honor, that the equities here weigh in favor of the rich person who settled the case voluntarily, who, by the way, then sued his own lawyers just recently, saying, hey, my lawyers knew it was a fraud, but they didn't tell me. That's in 2005. Settles the case. In that situation, Your Honor, we balance the equities. The suggestion that there's been no proof of equities is simply ignoring the record. Judge Breyer made it very clear that the equities were extraordinarily in favor of the plaintiffs. In his ruling on this fifth request for a stay, he then said, it's the same reason I gave last time. The reason I didn't say anything was because the judge stepped in and ruled immediately on the fifth request for a stay. He then, of course, said the same time, look at docket number 1007 and docket number 788. One of them was a letter to Your Honors. Judge Breyer took the unusual step of writing Your Honors a letter last time he sought a stay for the supposed recantations. And Judge Breyer said, dire circumstances will occur to these people for their payments. That's the evidence before you. Dire circumstances. On the other side, what do we have? We have a fugitive who probably was not entitled to be in court. Your Honors are very clear. Fugitives who ignored. This man was under indictment for these crimes. He was a fugitive in Mexico. So the suggestion is made, Your Honor, that somehow there's overwhelming evidence of fraud. Let's start with Your Honors' very pertinent first question. It has to be a fraud on the court. In eight occasions, eight occasions, they've conned this court with their well-financed litigation and they've said it's a fraud on the court. A fraud on the court, as Your Honors know, has to be a fraud that affects adjudication. Defrauding the other side, not enough. The Supreme Court in Hazel says a perjury charge is not enough. It must affect an adjudication. What has Judge Breyer done that shows that it's clearly erroneous that he thinks there's a succeed here? Judge Breyer has on seven prior occasions, and Your Honor can read docket number 490 or 1007. He does it in great detail. He says, I never reached the merits. The settlement judge certainly doesn't reach the merits. There's no fraud on a court in a settlement judge. That's not fraud on the court. Fraud on the court is where you contribute by fraud to the judge's decision-making. This was a voluntary settlement reached by a party who has lawyers. But was there never anything decided? Was there never a motion to dismiss, for example? There was not. Not where it was based on the merits at any time, Your Honor. The Ninth Circuit case decision last shot tells us something. There you had a Rule 68 offer of judgment that was signed falsely. And the Ninth Circuit said, well, yeah, that resulted in a settlement, but that wasn't a fraud on the court. The court wasn't adjudicating anything Your Honor said in that, this court said, because there was no adjudication that was affected. So the question is, at what point did the validity of the underlying merits ever come to judge? And the answer is it did not. Judge Breyer has said on three separate written occasions, including in the hearing on this motion, he said, I never reached the merits. I never reached the merits at all. If there was a fraud, it was, and by the way, a fraud of Mr. White, think about it for a second. Mr. White supposedly knows he didn't molest all these children despite the indictment and the pleading guilty to the Mexican authorities. He says I didn't do it. Well, then he wasn't defrauded. He settled the case like lots of cases get settled, which is why the case law is very clear that later perjury is discovered after the fact is not a fraud on the court, particularly in a settlement context. There are other remedies they can seek. He can sue his lawyer for malpractice. If he's done, he can do other things. But it's not, as Judge Breyer correctly determined, a fraud on the court. Your Honor, it has to. So we have the balance of equities, we have no irreparable injury, and we have no likelihood of success on the merits. Judge Breyer did not commit clear error in making a discretionary decision to preserve the status quo, even if Rule 62b applied. And I implore Your Honor to read it. I think you'll see it does not apply by its own terms as the letter breaks the court just said. Your Honor, let me just correct one clear error that was just made. Judge Breyer did not make a prima facie showing, say, there's a prima facie showing a fraud on the court. He did not do that at all. Judge Breyer, in the judicious management of this case, said there's some evidence about alleging supposed computer hacking. I'm going to let that discovery go forward. You can read the record, you can read the transcript, you can read his decision. He never said, I'm doing that because I think it's a prima facie case of fraud. He's doing it in excellent discretion. Your Honor, that particular issue of the hacking, I want to emphasize, is not before Your Honors. That issue, all which has been brought to your attention in the brief, was after Judge Breyer made his decision. He made his decision on October, August 2nd of 2013, and the stuff on hacking came up weeks later. That information is not probably before you. But even if it were, suppose hacking in 2007 for a settlement occurred in 2005. So, Your Honors, abstract allegations of fraud or convincing people to change their statements is not fraud on the court. I want to emphasize one last thing, if I could, Your Honors. These supposed recantations are not new evidence. The suggestion that it's all new evidence and it's suddenly now fraud on the court, Your Honors, the recantations, even if they were a fraud on the court, which they're not, and even if they're drug-related injuries, which they're not, the recantations are insufficient to provide the extraordinary relief of mandamus. Why? Because everyone who supposedly recanted what they presented that previously, Mr. Ulises Garcia, they raised his recantation in 2006 in docket number 490 and affirmed by this court that was not found to be sufficient. For the reasons that Judge Breyer said, was that the recantations were themselves unreliable. He didn't just, you know, sort of whimsically decide I'm going to ignore that. When it came up again with Mr. Olguin and Mr. Guzman, when it came up again, Judge Breyer said, you know what I'm going to do? Because there's this lawyer, this weird thing, this lawyer came in 2008 who said, hey, I've got possibly ten clients who want to recant. Judge Breyer said, we better look into that. He then does a very prudent thing. He gets Judge David Garcia to act as special master to go down there and interview them. The suggestion there's no evidence that these recantations are themselves suspect is wrong. Judge Breyer found their suspect. He's reiterated that finding at least three times. The special master said these are particularly susceptible people. They throw money, they change, and those recantations are not reliable. The trustee, Joseph Smith, also independent, said this is not evidence that we can rely on. And he also said the effect of stopping the payments, particularly talking about that small amount of money, everybody per month versus the other side, which is, you know, has lots of money, is unbalanced. But what happened? In that situation, Judge Breyer said, I think this is legitimate information that leads me to conclude that these recantations are not reliable even if they can be treated as fraud in the court. Now, he later said, and by the way, you're bringing these up too late. I think it was on motion to vacate number six. We're now on eight. On motion to vacate number six, Judge Breyer also ruled in docket number 1007 that it's too late. It's just too late because you brought this up six years ago and five years ago and now four years ago. And so, Your Honor, the suggestion that we have some great body of evidence that Judge Breyer has ignored and should be mandated a mandamus against Judge Breyer for the way he's handled this is to ignore the standard for mandamus, is ignore the standard for reparable injury, is to ignore the standard for balancing of the equities, and is to upset the status quo, which Rule 62 does not allow. This is a trial judge who is acting in a difficult situation with great prudence, with great prudence. And I don't think this is in any situation at the time to rule by way of mandamus that we're going to stop the payments. And these recantations that supposedly changed the lineup, my favorite movie is Groundhog Day. We would relive the same day over and over again. This case, I think, is a little of that when we've got all these recantations that are being relived over again and being resent. If Judge Breyer believes that there's a need for further discovery or evidence, he has demonstrated over the course of the last decade that he will consider that. This Court has affirmed him three separate times when the matter has gone before it, each time with the same basic evidences before you now. Unless there are any questions, Your Honor, I'm happy to submit. Thank you, counsel. And we'll give you two minutes for rebuttal. Can you put two minutes back on the clock? Thank you very much. What I'm hearing from Mr. Wanksaf is a citation of a variety, a number of documents that were supposedly filed in the district court. They have not been presented to this Court in any exhibit, and I object to that. All he presented to this Court was a brief, an argument on behalf of four of the real parties. The other 18 parties didn't respond, didn't file an answer. He's, for example, throwing out what Judge Garcia, who supposedly was appointed by Judge Breyer to go down and conduct an investigation. That's all hearsay. It's not before the Court here. What's hearsay? What Garcia said or that Garcia was said? Judge Garcia's statements about what other people said. Yes, but that was before the district court. That was before the district court, but it hasn't been presented to this Court. And if it was important to him. Well, what do you mean it's not presented? I mean, that's the record he had before. No, but it hasn't been presented to this Court as an exhibit. We don't have Judge Garcia's report. And what Judge Garcia said, by the way, there's no declaration under oath. It's his report about what other people may have said. Well, but that's true of everything you're submitting as well. I mean, you're basically submitting this huge Mexican decision, which is essentially the same thing or less so. Well, it is. But judicial notice would be appropriate of the decision. And the real parties then contested its validity or authenticity. And there are declarations in there by Danny Garcia, one of the co-conspirators. There's a statement by a variety of witnesses corroborating the fraud. There's a statement by three of the plaintiffs that it was a fraud. There's a declaration by Stuart Haverlack as to a statement by Borrego that it was a fraud. He learned it was a fraud, and he challenged Repogol about it. Repogol threatened to kill his family. I mean, the evidence of fraud here is overwhelming. And the plaintiffs, real parties here, have never submitted anything. And no declaration, nothing, to contest it. With respect to the validity of the Rule 60 motion, you know, we're not there yet. I mean, to argue whether the Rule 60 motion would lie or if we've been able to meet our burden of proof with respect to the Rule 60 motion, in this context I think is way premature. You know, there are a variety of, as I said in my opening argument, a variety of decisions that were made by two judges, Judge Battelle, Judge Breyer, then a magistrate judge, Spiro, with respect to a series of questions that came up, the forum nonconvenience decision before the settlement conference, then a settlement conference where Repogol and Borrego and the plaintiffs are defrauding the settlement judge. This is a fraud from the beginning. And they basically represented to him, hey, this is a legitimate case. We've suffered these injuries. So, I mean, to litigate the Rule 60 motion here, to urge you that it's valid, I think is way premature. But the equities lie with the estate, with the heirs of the estate at this point, because all the money that's being paid out is gone. It's forever gone. And I realize it's financial. And I understand that stays are, you know, for a financial reason, stays are not necessarily to be granted. But in this case where the money will never be recovered again, the money that's being paid out to the plaintiffs in Mexico is essentially gone. White will never, the estate of white, the heirs will never be able to recover that money again. And you have to couple with that that they've been paid millions of dollars so far. And you have to couple with that the fact that the remainder of the money on the judgment will be secure. It's in a trust. It's not going to be touched. So there is security for that. Counsel, you're way over your time. I'm way over my time. All right. Thank you very much. Thank you both for your arguments. Thank you. We will take the case under submission. And we'll recess for the morning.
judges: Thomas, Fisher, Berzon